**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**ROBERT D. WARD,**

      **Petitioner,**

  **v.**                                                                  **9:01-CV-1054**
                                                  **(NPM)**

**ROBERT KUHLMAN, Superintendent, Sullivan**
**Correctional  Facility,**

      **Respondent.**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**                                    **OF COUNSEL:**


**FOR THE PETITIONER:**

**ROBERT D. WARD**
Petitioner, <u>pro se</u>
94-A-1357
Wende Correctional Facility
P.O. Box 1187
Alden, NY 14004


**FOR THE RESPONDENT**:

**HON. ANDREW M. CUOMO**                 **SENTA B. SIUDA, Esq.**
Office of Attorney General                     Asst. Attorney General
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

**NEAL P. MCCURN**
**Senior United States District Judge**

                    **MEMORANDUM-DECISION AND ORDER**

**I.**      <u>**Background**</u>

      **A.**      <u>**State Court Proceedings**</u>

      The state court records reflect that in August, 1993, petitioner, <u>pro se</u> Robert D. Ward

and his friend, Touissant Fernandez, planned on robbing a tavern called "Begie's Bar" that

was located in Binghamton, New York.  <u>See</u> Respondent's Appendix on Appeal ("Resp.

App.") at 13, 119-21; see also Appellant's Appendix on Appeal ("App.") at A120.  Fernandez

eventually convinced Willie Ray, Jr. to assist the group in robbing the tavern.  Resp. App. at

119.  Ward, Fernandez, and Ray then met to discuss their plan regarding the robbery, Resp.

App. at 123,[1] and on August 1, 1993, Ray drove the men near the area of Begie's Bar, dropped

them off near the bar and parked his car down the street.  Resp. App. at 125-26; App. at

A177-78.  A few minutes later, the men returned to Ray's car, where he learned that

Fernandez was having reservations about committing the robbery.  Resp. App. at 115, 126.

However, after a brief discussion, the men agreed to return to the bar to commit the robbery.

As the men entered the bar, Ward and Williams brandished their guns and "demand[ed]

everything" from the patrons.  Resp. App. at 97.  The men then ordered the customers to

surrender their money and lay down on the floor.  Resp. App. at 98-99.[2]  After they collected

the money and jewelry taken from the patrons, the men went to Ray's car and fled the scene.

Resp. App. at 127.

        The state court records further reflect that in the early afternoon of August 2, 1993,

Richard P. Williams and his five year old son, Brandon, arrived at the jewelry store Williams

owned that was called Van Scoy's Diamond Mine in Vestal, New York.  Resp. App. at 68-70.

--------

[1]        At trial, Ray referred to an individual with the nickname "Supreme" as one of
the perpetrators.  E.g. Resp. App. at 123.  The evidence established that "Supreme" is a
nickname of Ward.  See App. at A17.

[2]        During the course of the robbery, one of the perpetrators pointed a handgun
at a patron who was attempting to leave the bar and fired the weapon, however the gun
misfired.  Trial Tr. at 148.

Shortly before one o'clock that afternoon, Ward and Victor Quan entered the store under the guise of being customers. Resp. App. at 74-75, App. at A114. After a period of time, Quan informed Williams that he wished to purchase an engagement ring for his fiancé, and, after making a selection, began paying Williams for the ring in one hundred dollar bills. Resp. App. at 77-79. As Williams began to prepare the sales slip for the transaction, he glanced through the display case and observed a semiautomatic handgun in the waistband of Ward's pants. Resp. App. at 79. Soon thereafter, Ward pointed the gun at Williams' head and declared "don't fuck with me, I just as soon blow your head off right now." Resp. App. at 80. Ward then forced Williams to the back of the store, handcuffed him, held the gun to his son's head and stated "we'll just blow his brains out if you don't cooperate." Resp. App. at 85. Quan and Ward eventually succeeded in opening the display cases of the jewelry store and then removed the contents. Resp. App. at 90. After a period of time, Williams eventually convinced Ward that Quan had triggered a silent alarm during the course of the robbery, and suggested that the police would be soon arriving at the store to respond to the alarm. Resp. App. at 91. Ward then handcuffed Williams to a table in the store to prevent him from contacting the police and the two fled the scene. Resp. App. at 91-92. After they left, Ward's son retrieved a phone, called 911 and law enforcement agents were dispatched to the store. Resp. App. at 93-94.

Investigator Leslie T. Hyman of the New York State Police was assigned to investigate the Binghamton and Vestal robberies. Resp. App. at 141. Investigator Hyman

eventually learned that Nicole James, an inmate in the New York State Department of

Correctional Services ("DOCS"), had personal knowledge about Ward's involvement in the

above-described robberies.[3]  App. at A123, Resp. App. at 141.  After interviewing James, it

was agreed that she would wear a recording device, meet with Ward and attempt to elicit

incriminating statements from him about the robberies.  App. at A124.  In exchange for her

cooperation, law enforcement agents agreed to request that James be granted parole at her

next scheduled parole hearing.  Id.  During the course of a subsequent conversation between

James and Ward, he made statements to her that implicated himself in both the robbery of the

Binghamton tavern as well as the Vestal jewelry store.  E.g., Resp. App. at 115-16.

On January 25, 1995, Investigator Hyman drove to the Elmira correctional facility to

interview Ward.  Resp. App. at 141.  When the two met, the investigator explained the

purpose of the meeting, after which Ward requested that an attorney be present for their

discussion.  Resp. App. at 144.  Investigator Hyman then declared that the interview would be

terminated and that other individuals involved in the robberies would be approached to

ascertain whether they would cooperate with law enforcement agents.  Resp. App. at 144.

Shortly thereafter, Ward withdrew his request for counsel and he allowed the interview with

Investigator Hyman to go forward without any attorney being present.  Resp. App. at 144.

During that interview, which was tape recorded without Ward's knowledge, Ward was

informed that if he cooperated with the authorities and assisted law enforcement officials in

---

[3]      At trial, James, who is also known as Lashon Alexander, testified that Ward
had previously been her boyfriend.  App. at A119.

4

implicating other individuals who had participated in the robberies,  he would be allowed to

plead guilty to the jewelry store robbery and receive a sentence which contained a five year

minimum term of imprisonment.  Resp. App. at 142-44.  He was also cautioned that if he

chose not to cooperate and was eventually convicted of the charges by a jury, he might

thereafter be sentenced to a term of imprisonment of between twenty-five years to life by the

County Court.  App. at A76; Resp. App. at 150-51.  Ward eventually admitted to Investigator

Hyman that he was involved in both robberies and provided law enforcement agents with a

signed confession to that effect.  See Resp. App. at 152-55.[4]

Attempts to persuade Ward to enter a guilty plea eventually failed, however, and on

March 23, 1995, Investigator Thomas R. Tynan of the Broome County district attorney's

office arranged to have witnesses to the robberies view a line-up of individuals in which

Ward participated.  Resp. App. at 129-33.  Although some of those witnesses tentatively

identified Ward as one of the robbers, e.g., Resp. App. at 52, 59, no witness definitively stated

that Ward was necessarily one of the perpetrators of either the tavern or jewelry store

robberies.

On May 3, 1995, a Broome County grand jury indicted Ward, charging him with

robbery in the first degree in connection with the robbery of Van Scoy's Diamond Mine in

Vestal, one count of first degree robbery with respect to the robbery at Begie's Bar, and three

counts of attempted robbery in the first degree in connection with the robbery of individual

---

[4]     Ward's incriminating statement is reproduced at pages two through five of
the District Attorney's Appendix on Appeal.

patrons at that bar.  See Indictment No. 95-250, Counts One through Five.

On October 26, 1995, following the filing of a motion to suppress identification testimony as well as Ward's incriminating statements to law enforcement agents, Broome County Court Judge Patrick H. Mathews conducted a suppression hearing at which several individuals, including Investigators Hyman and Tynan, testified.  In a Decision and Order dated November 9, 1995, Judge Mathews denied Ward's suppression motion in all respects. See People v. Ward, No. 95-0250 (Broome Cty. Ct. Nov. 9, 1995).

On November 13, 1995, Ward's jury trial on the foregoing charges commenced.  At that trial, the prosecution called numerous witnesses, including Investigator Hyman, the bartender of Begie's Bar and several of its patrons at the time of the robbery, including Elton Hawkins, Henry Shorts, Sr. and Jerry Larkins, the three individuals who were named in the attempted robbery charges contained in Counts Three through Five of the Indictment. Additionally, Anthony Moffett, a prisoner at the Elmira correctional facility, testified that while he was incarcerated with Ward, he boasted that he had participated in the jewelry store robbery.  App. at A114, A117.

At the conclusion of his trial, the jury found Ward guilty of all charges.

On January 4, 1996, Ward appeared before Judge Mathews for sentencing.  At that proceeding, he was sentenced by the County Court as a persistent violent felony offender to a term of twenty-five years to life imprisonment on the first degree robbery conviction relating to the jewelry store, and a consecutive sentence of fifteen years to life imprisonment on his

6

conviction of the first degree robbery of Begie's Bar.  See Transcript of Sentencing of Robert

Ward (1/4/96) at 15 ("Sentencing Tr.").[5]  All of Ward's sentences were ordered to run

consecutive to a sentence of eight years to life imprisonment Ward was already serving on an

unrelated felony conviction.  Sentencing Tr. at 15-16.

Ward appealed his convictions to the New York State Supreme Court, Appellate

Division, Third Department.  The Broome County district attorney opposed that appeal, and

on July 24, 1997, the Third Department unanimously affirmed Ward's conviction.  See

People v. Ward, 241 A.D.2d 767 (3rd Dep't 1997).  On November 21, 1997, the Court of

Appeals denied Ward's application for leave to appeal to that court.  See People v. Ward, 91

N.Y.2d 837 (1997).

On November 23, 1998, petitioner filed a habeas petition in this Court relating to the

above-described convictions.  See Ward v. Kuhlman, No. 6:98-CV-1808, Dkt. No. 1.  On

May 5, 1999, however, petitioner filed a motion to have that petition dismissed so he could

pursue a collateral challenge to his conviction in the state courts.  Id., Dkt. No. 10.  By Order

filed May 18, 1999, now-United States District Judge David N. Hurd granted that application

and dismissed Ward's habeas petition without prejudice.  Id., Dkt. No. 11.

Ward then filed a series of motions to vacate his judgment of conviction pursuant to

New York's Criminal Procedure Law ("CPL"), all of which were denied by the County Court.

---

[5]     Judge Mathews also sentenced Ward to concurrent terms of ten years to life imprisonment on each of his first degree attempted robbery convictions, which sentences were ordered to run concurrent with his first degree robbery conviction relating to the tavern.  Sentencing Tr. at 15-16.

The Appellate Division denied petitioner's applications seeking leave to appeal the denial of those Article 440 motions.

On June 25, 2001, petitioner filed a second petition relating to the above convictions seeking federal habeas corpus review.  By Order filed on September 26, 2001, then-Chief United States District Judge Frederick J. Scullin, Jr. noted that Ward's petition appeared to be time-barred in light of the one year statute of limitations applicable to habeas corpus petitions under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA").  See Dkt. No. 2. Judge Scullin therefore directed Ward to file an amended petition within thirty (30) days of the filing date of that order if he wished to avoid dismissal of his action.  Id.  Ward filed that pleading on October 29, 2001, see Dkt. No. 4, and on June 10, 2002, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed a response in opposition to Ward's amended petition.

On June 24, 2002, Ward filed a motion requesting that this Court stay this proceeding while Ward pursued a state-court collateral challenge to his conviction.  Dkt. No. 12.  On July 24, 2002, Judge Scullin granted that application.  Dkt. No. 13.  Thereafter, on March 29, 2003, while this federal action was stayed, Ward filed an application seeking a writ of error coram nobis.  See Dkt. No. 48, Exh. 7 ("Coram Nobis Application").  In that motion, petitioner claimed that his appellate counsel rendered ineffective assistance because he "omitted significant and obvious issues while pursuing issues without clearly marshaling the significantly strong[er] facts within those issues."  See Memorandum of Law in Support of

Coram Nobis Application at 2.  That motion was denied in a Decision and Order of the

Appellate Division dated May 16, 2003.  See People v. Ward, No. 14643 (3d Dept. May 16,

2003) (reproduced at Dkt. No. 48, Exh. 9) ("May, 2003 Order").  The Court of Appeals

thereafter denied Ward leave to appeal that decision in its order dated July 21, 2003.  See Dkt.

No. 48, Exh. 10.

On August 9, 2003, Ward filed a motion with the County Court in which he claimed

that his trial attorney rendered ineffective assistance during the course of Ward's sentencing.

See Dkt. No. 48, Exh. 11 ("August, 2003 CPL Motion").  In his Decision and Order dated

December 1, 2003, Judge Mathews denied that application.  See People v. Ward, No. 95-0250

(Broome Cty. Ct. Dec. 1, 2003) ("December, 2003 Order").

On April 13, 2004, Ward filed a motion in this matter in which he requested that the

stay ordered by the Court relating to this action be lifted.  See Dkt. No. 30.  On June 15, 2004

Ward moved for leave to file another amended petition in this action.  Dkt. No. 39.  In its

order filed on October 4, 2004, this Court granted Ward's motions to lift the stay and to file

an amended petition herein.  Dkt. No. 43.  This Court further ordered the Clerk to file the

proposed amended pleading submitted by Ward in support of his motion, Dkt. No. 43, and the

Clerk thereafter docketed that submission.  See Dkt. No. 44 ("Am. Pet.").  In that pleading,

Ward argues that:  i) his trial attorney failed to "investigate," and also failed to "obtain[]

witnesses and documents" beneficial to Ward's defense; ii) defense counsel wrongfully failed

to challenge the fact that Ward was being sentenced as a violent persistent felony offender;

9

and iii) he received the ineffective assistance of appellate counsel.  See Am. Pet. at 7.

**II.**     **Discussion**

      **A.**     **Standard of Review**

      The April, 1996 enactment of the Antiterrorism and Effective Death Penalty Act

("AEDPA") brought about significant new limitations on the power of a federal court to grant

habeas relief to a state prisoner under 28 U.S.C. § 2254.

      In discussing this deferential standard, the Second Circuit noted in Rodriguez v.

Miller, 439 F.3d 68 (2d Cir. 2006) that:

> a federal court may award habeas corpus relief with respect to a
> claim adjudicated on the merits in state court only if the
> adjudication resulted in an outcome that: (1) was "contrary to,
> or involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States"; or (2) was "based on an unreasonable determination of
> the facts in light of the evidence presented in the State court
> proceeding."

Rodriguez, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d));[6] see also DeBerry v. Portuondo,

403 F.3d 57, 66 (2d Cir. 2005); Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir. 2003);

Boyette v. LeFevre, 246 F.3d 76, 88 (2d Cir. 2001).  In providing guidance concerning

application of this test, the Second Circuit has recently noted that:

> [A] state court's decision is "contrary to" clearly established
> federal law if it contradicts Supreme Court precedent on the

---

      [6]     "Clearly established federal law" in this context "refers only to the holdings
of the Supreme Court." Rodriguez v. Miller, ___ F.3d ___, No. 04-6665PR, 2007 WL
2445120, at *3 (2d Cir. Aug. 29, 2007) (citing Williams v. Taylor, 529 U.S. 362, 412
(2000)).

> application of a legal rule, or addresses a set of facts "materially
> indistinguishable" from a Supreme Court decision but
> nevertheless comes to a different conclusion than the Court did.
> Williams, 529 U.S. at 405-06; Loliscio v. Goord, 263 F.3d 178,
> 184 (2d Cir. 2001).... [A] state court's decision is an
> "unreasonable application of" clearly established federal law if
> the state court "identifies the correct governing legal principle
> from [the Supreme] Court's decisions but unreasonably applies
> that principle to the facts" of the case before it.  Williams, 529
> U.S. at 413.

Thibodeau v. Portuondo, 486 F.3d 61, 65 (2d Cir. 2007); see also Williams v. Artuz, 237 F.3d

147, 152 (2d Cir. 2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with

determining whether the state court's determination was merely incorrect or erroneous, but

instead whether such determination was "objectively unreasonable."  Williams, 529 U.S. at

409; see also Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).  Objectively unreasonable

in this context has been interpreted as meaning that "'some increment of incorrectness beyond

error is required'" for the habeas court to properly grant the habeas application.  Earley v.

Murray, 451 F.3d 71, 74 (2d Cir. 2006) (quoting Francis S., 221 F.3d at 111).

> **B.**     **Substance of Ward's Claims**

>> **1.**     **Ineffective Assistance of Trial Counsel**[7]

---

[7]     As noted above, two of Ward's grounds for relief allege distinct legal theories in support of his claim that he received the ineffective assistance of trial counsel, while the remaining ground in his amended petition asserts that he received the ineffective assistance of appellate counsel.  See Am. Pet.  This Court has therefore found it appropriate to address the merits of his amended petition by reference to the legal theories raised by Ward, rather than by the particular ground in which he has asserted such claims.

### i.    Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that:  "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const., Amend. VI.  To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both:  i) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and ii) resulting prejudice that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 688-90 (1984); Wiggins v. Smith, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in Strickland).

### ii.    Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

In his initial ground for relief, Ward asserts that his trial counsel was ineffective because he was not properly prepared to proceed to trial on the charges against Ward.  Am. Pet., Ground One.  Ward additionally argues that his trial attorney rendered ineffective assistance at sentencing.  Am. Pet., Ground Two.  The Court addresses these two distinct theories seriatim.

### a.    Inadequate Pretrial Preparation

In support of his first ground alleging ineffective assistance, Ward asserts that his trial attorney failed to:  i) perform an adequate pretrial investigation; and ii) obtain documents and

interview witnesses to elicit evidence that would have proved beneficial to his defense.  Am.

Pet., Ground One.  Petitioner specifically claims that his trial attorney wrongfully failed to

interview, inter alia:  i) Shawn Smith and Jimmy Wilson, both of whom Ward argues would

have testified that Moffett's incriminating testimony was false (Traverse at 2-3); and ii) other

individuals whom Ward claims could have testified that they observed two males in the area

of the Vestal jewelry store prior to the robbery at a time when Ward could not have been

present in that area (Traverse at 3-5).

     Ward asserted these claims in the CPL Motion he filed with the County Court on

August 21, 2002.  See Dkt. No. 48, Exh. 1.  In denying this aspect of that claim, Judge

Mathews held:

> [Ward's] bare allegations that his attorney failed to provide him with
> documents, records and reports, necessary to keep him informed, thus
> denying him effective assistance of counsel is unsupported....  Defense
> counsel further states in his affidavit, he took many hours reviewing the
> voluminous records and reports provided to him by the prosecution.  In
> a sworn statement the prosecutor states that trial counsel visited the
> prosecution's office many times in preparation for a pretrial
> suppression hearing and trial....  Where, as here defense counsel
> actively participates in the trial, by filing appropriate pretrial motions,
> effectively cross-examining witnesses, raising appropriate objections,
> and delivering cogent opening and closing statements, his claim of
> ineffective assistance of counsel is meritless....  Disagreements over
> strategy do not constitute ineffective assistance of counsel.  [Ward],
> with the benefit of hindsight can point out where he thinks trial counsel
> was deficient.  However, [Ward] has failed to demonstrate the absence
> of strategic or other legitimate explanations for counsel's conduct....
> [Ward's] contention with respect to Shawn Smith was raised,
> considered and rejected by this Court in a previous motion, as was a
> claim raised with respect to a statement of Jimmy L. Wilson....
> [Ward's] claim that two black males were scene in the plaza as early as

13

> 11:30 am, the morning of the robbery[,] exculpates him, is refuted by
> trial transcripts of the testimony of witnesses Tonya Fletcher Anderson
> and Willie Ray, Jr....

<u>See</u> November, 2002 Order at 2-3.

"A petitioner's 'bald assertion that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably.'" <u>Atkinson v. United States</u>, No. 05-CV-286, 2005 WL 3555946, at *7 (N.D.N.Y. Dec. 28, 2005) (McAvoy, S.J.) (quoting <u>Sheedy v. United States</u>, No. 96-CV-1289, 1997 WL 394664, at *9 (N.D.N.Y. July 8, 1997) (Munson, S.J.)) (other quotation and citations omitted). Judge Mathews' observations that Ward's counsel:  i) filed appropriate pretrial motions; ii) effectively cross-examined prosecution witnesses; iii) lodged appropriate objections during the course of Ward's trial; and iv) delivered "cogent" opening and closing statements belies Ward's current claim that his attorney was "unprepared" [<u>sic</u>]. <u>See</u> Am. Pet. at 6.

Moreover, the County Court specifically considered and rejected Ward's claims that Shawn Smith and/or Jimmy Wilson would have provided testimony beneficial to Ward's defense. <u>See</u> November, 2002 Order at 3; <u>see also</u> <u>People v. Ward</u>, No. 95-0250 (Broome Cty. Ct. Oct. 19, 1999) at 2; <u>People v. Ward</u>, No. 95-0250 (Broome Cty. Ct. Apr. 3, 1999) at 3-5. Judge Mathews also found Ward's claim that witnesses could have provided exculpatory testimony in the form of testimony regarding individuals observed in the plaza before the jewelry store was robbed to be without substance. <u>See</u> November, 2002 Order at 3-4.

In support of the present application, Ward has not provided any evidence which casts

14

doubt on the County Court's determination that the record established that his trial counsel

adequately prepared for Ward's trial.[8]  He therefore cannot establish that the County Court's

decision denying this aspect of his ineffective assistance claim is either contrary to, or

represents an unreasonable application of, <u>Strickland</u> and its progeny.

**b.**      **<u>Inadequate Representation at Sentencing</u>**

Ward next challenges the legality of the sentences imposed on him by Judge Mathews.

<u>See</u> Am. Pet., Ground Two.

The transcript of Ward's sentencing reveals the following discussion regarding

Ward's criminal history:

> THE COURT:          The district attorney has filed with the Court
> a statement alleging the defendant is a
> persistent violent felony offender, that –
> alleging convictions, incarcerations that
> would establish that, in fact, he was a ...
> violent felony offender.  And in addition, of
> course, it alleges that there has been a
> previous finding that this defendant [was] a
> persistent violent felony offender in 1993.

---

[8]      Imbedded in Ward's first ground for relief is his assertion that the prosecutor
wrongfully failed to provide defense counsel with copies of composite sketches that had
been created by law enforcement agents relating to suspects in the robberies.  <u>See</u> Traverse
at 4-5.  However, Judge Mathews specifically noted in his November, 2002 Order that the
records before the County Court suggested that, prior to Ward's trial, "defense counsel was
notified that police photographs and drawings were located in the office of the District
Attorney and available for inspection."  <u>See</u> November, 2002 Order.

Determination of factual issues made by a State court "shall be presumed to be
correct," and a petitioner is required to rebut this presumption by clear and convincing
evidence.  <u>Majid v. Portuondo</u>, 428 F.3d 112, 125 (2d Cir. 2005) (citing 28 U.S.C. §
2254(e)(1)); <u>see</u> <u>Mask v. McGinnis</u>, 233 F.3d 132, 139 (2d Cir. 2000).  Ward has not
provided this Court with any – much less clear and convincing – evidence which establishes
that the above finding of Judge Mathews is incorrect in any way.

15

| | |
|---|---|
| DEFENSE COUNSEL: | We're aware of that, your Honor. |
| THE COURT: | And that is binding, of course, on this Court. Do you understand that? |
| DEFENSE COUNSEL: | Yes, your honor, we understand that too. |
| THE COURT: | All right.  And so, at this point in time, then, I will adjudicate the defendant has been a persistent violent felony offender, unless you want to be heard further .... |
| DEFENSE COUNSEL: | No, we're stuck with it, your Honor.  That's the way – he was sentenced as a violent felony offender in, I believe, Queens, I believe it was.  I know what the law says.  It says it goes with him the rest of his life. |

Sentencing Tr. at 2-3.

Thereafter, just prior to sentencing, the County Court made the following observations about Ward:

| | |
|---|---|
| THE COURT: | I know your record.  I took the time to read it.  I know in 1981, your first brush with the law was what?  It was a robbery.  It was reduced down and you got a youthful offender adjudication.  They put you on probation.  Bu that didn't teach you anything.  A year later, an adult conviction for robbery and sent to state prison.  You no more get out of state prison and what happened?  You commit another robbery, another adult conviction for robbery and your sent back to state prison, 1985... And the one in New York City for which you are presently doing the eight to life was another |

16

armed robbery....

Sentencing Tr. at 12-13.  That Court then sentenced Ward as a persistent felony offender to the

terms of imprisonment noted above.

Ward asserts herein, as he did in his August, 2003 CPL Motion, that the County Court's

sentence was improper.  See Am. Pet., Ground Two.  Specifically, he claims that defense

counsel wrongfully failed to:  i) challenge the prosecution's statement during sentencing that

Ward could properly be sentenced as a persistent violent felony offender; and ii) "investigate in

order to present a defense against the violations of the petitioner's constitutional rights during

sentencing."  See Traverse at 7.

In denying the aspect of the CPL Motion filed by Ward in August, 2003 challenging the

propriety of his sentence, Judge Mathews found that Ward:

> failed to present any sworn factual allegations indicating that the
> sentence imposed was improper.  Moreover, the record establishes
> that defendant was properly sentenced as a persistent violent
> felony offender.  The record reveals that there was no basis for
> defense counsel to challenge the predicate convictions.

See December, 2003 Order at 2.

In considering this claim, this Court has reviewed New York's penal law in order to

ascertain how individuals may properly be found to be persistent violent felony offenders.  New

York Penal Law defines a persistent violent felony offender as an individual:

> who stands convicted of a violent felony offense as defined in
> subdivision one of section 70.02 ... after having previously been
> subjected to two or more predicate violent felony convictions as
> defined in paragraph (b) of subdivision one of section 70.04 of this

article.

See N.Y. Penal Law § 70.08(1)(a).  The offenses of robbery in the first and second degrees, as

well as an attempt to commit either of these crimes, are included in the Penal Law's definition of

"violent felony offenses."  See N.Y. Penal Law § 70.02(a), (b), (c).

The transcript of Ward's sentencing establishes that he was convicted of several felony

robberies prior to the convictions challenged herein.  Moreover, according to the website

maintained by the Department of Correctional Services, prior to the challenged convictions,

Ward was twice convicted of second degree attempted robbery, as well as second degree

robbery.  See http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ2 /WINQ120 (Inmate

Name: Ward, Robert); see also Dkt. No. 56 (letter from DOCS listing sentencing history of

Ward).  Therefore, as Judge Mathews properly found in denying Ward's August, 2003 CPL

Motion, Ward was properly sentenced as a persistent violent felony offender on January 4, 1996.

An attorney cannot be found to have acted in an objectively unreasonable manner by

failing to assert a meritless argument.  E.g., Mackenzie v. Portuondo, 208 F.Supp.2d 302, 319

(E.D.N.Y. 2002) (citing Aparicio v. Artuz, 269 F.3d 78, 99-100 & n. 10 (2d Cir. 2001)) (other

internal quotation and citation omitted).  Since the record conclusively demonstrates that Ward

was properly sentenced as a persistent violent felony offender for the crimes challenged herein,

he has wholly failed to establish that the County Court's decision denying his August, 2003 CPL

Motion is either contrary to, or represents an unreasonable application of, the above-referenced

Supreme Court precedent.  Thus, Ward's second ground for relief must be denied.

18

### 2.    Ineffective Assistance of Appellate Counsel

In his third and final ground, Ward claims that he received the ineffective assistance of appellate counsel.  See Am. Pet., Ground Three.

### i.    Clearly Established Supreme Court Precedent

The Sixth Amendment's command that criminal defendants are entitled to the assistance of counsel has long been interpreted by the Supreme Court as requiring that indigents be provided with assigned counsel for their first appeal as of right.  Douglas v. California, 372 U.S. 353, 358 (1963).  Thus, under the Sixth Amendment, an individual is entitled to the effective assistance of appellate counsel.  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  In evaluating a claim alleging the ineffective assistance of appellate counsel, federal courts are to utilize the two-pronged test enunciated by the Supreme Court in Strickland.  See Smith v. Robbins, 528 U.S. 259, 287-89 (2000).

### ii.    Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

Ward alleged in his coram nobis application, and also asserts herein, that his appellate counsel rendered ineffective assistance because he:  i) failed to argue on appeal that Ward was denied the effective assistance of trial counsel; and ii) submitted "poorly drafted arguments" in support of Ward's direct appeal.  See Am. Pet., Ground Three; Traverse at 3-5, 7; see also Coram Nobis Application at 6-10.

As noted above, the Appellate Division found Ward's Coram Nobis Application to be without merit.  See May, 2003 Order at 1.  This Court must therefore ascertain whether that

decision is either contrary to, or represents an unreasonable application of, the above-cited

Supreme Court precedent.

Considering first Ward's claim that his appellate counsel wrongfully failed to argue on

appeal that petitioner's trial attorney rendered ineffective assistance, the undersigned notes that

because this Court has determined that trial counsel did not render ineffective assistance of

counsel, appellate counsel cannot be found to have rendered ineffective assistance by failing to

assert an ineffective assistance claim on appeal relating to defense counsel.  See DeVivo v.

Superintendent, Auburn Correctional Facility, No. 02-CV-0840, 2006 WL 581145, at *18

(N.D.N.Y. Mar. 8, 2006) (citations omitted) (Kahn, J., adopting Report-Recommendation of

Magistrate Judge David E. Peebles), appeal dismissed, DeVivo v. Goord, No. 06-2279-pr (2d

Cir. June 13, 2007).  In other words, appellate counsel cannot be found to have rendered

ineffective assistance by failing to assert a meritless claim on appeal.  See Lopez v. Fischer, No.

05 CIV.2558, 2006 WL 2996548, at *12 (S.D.N.Y. Oct. 16, 2006) ("petitioner cannot show that

appellate counsel's failure to raise [meritless] claims on direct appeal renders his representation

below an objective standard of reasonableness, nor can petitioner show that had these claims

been presented on appeal, his outcome would have been any different"); Melenciano v. Walsh,

No. 02 CIV.9593, 2005 WL 768591, at *8 (S.D.N.Y. Apr. 6, 2005) ("[w]here the underlying

claim is without merit, the claim of ineffective assistance of counsel for not raising the issue

during the trial is, likewise, meritless") (citations omitted).

Ward's final theory in support of this claim argues that the quality of the appellate brief

20

was poor, "ignored critical issues," and argued points that "were significantly weaker" than other claims that could have been asserted on appeal.  Traverse at 7.

Initially, the Court notes that the "critical issues" Ward argues that his counsel wrongfully failed to assert on appeal relate to Ward's various theories in which he claims that his trial counsel rendered ineffective assistance.  E.g., Traverse at 7.  However, for the reasons discussed above, that claim is without substance.

In conjunction with this claim, the Court has reviewed the appellate brief filed on Ward's behalf to ascertain whether his remaining claims regarding appellate counsel have merit.[9]  That brief alleged that:  i) the prosecution failed to provide the defense with all Rosario[10] material to which it was entitled; ii) Ward's Miranda rights[11] were violated when he was questioned by law enforcement officials, thereby rendering Ward's incriminating statements inadmissible at trial; and iii) the pretrial line-up procedure utilized by the police was unduly suggestive.  See App. Br. Although it ultimately rejected these claims, the Appellate Division specifically addressed all three of these arguments in its decision denying Ward's appeal, and provided a detailed discussion in support of its conclusion that Ward's Miranda rights were not violated during the course of the related criminal proceedings.  See Ward, 241 A.D.2d at 769-70.

Appellate counsel cannot be considered ineffective for making a strategic decision to

---

[9]      This brief asserts three points in support of the appeal and was accompanied by an appendix in support thereof consisting of over two hundred (200) pages.

[10]      People v. Rosario, 9 N.Y.2d 286 (1961).

[11]      Miranda v. Arizona, 384 U.S. 436, 444 (1966).

abandon weaker arguments, and instead develop only those arguments more likely to succeed. As the Supreme Court has noted, the process of "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)); see also Kae v. Artuz, No. 98-CV-4711, 2000 WL 1738339, at *5 (E.D.N.Y. Nov. 21, 2000) (citing Jones); see also Parke v. United States, No. 97-CV-526, 1999 WL 242637, at *3 (N.D.N.Y. Apr. 22, 1999) (McCurn, S.J.), aff'd, 2002 WL 109475 (2d Cir. 2002).

It is apparent to this Court that appellate counsel's strategy was reasonable and sound, and that the claims asserted in his brief were cogently argued. Under such circumstances, an ineffectiveness claim challenging the performance of appellate counsel must fail. E.g. Gonzalez v. Duncan, No. 00-CV-2857, 2001 WL 726985, at *6 (E.D.N.Y. June 22, 2001) (denying habeas claim alleging ineffective assistance of appellate counsel where appellate brief reveals sound appellate strategy on part of attorney); Davis v. Keane, No. 99 CV 71, 2001 WL 13288, at *6 (E.D.N.Y. Jan. 4, 2001) (same), aff'd, No. 01-2110, 2002 WL 2009559 (2d Cir. Sept. 3, 2002).

Since the Appellate Division's decision denying Ward's Coram Nobis Application is neither contrary to, nor an unreasonable application of, relevant Supreme Court precedent, petitioner is not entitled to habeas relief on this final theory asserted by him in his habeas application.

**III.    Certificate of Appealability**

Finally, the undersigned notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of
> appealability, an appeal may not be taken to the court of appeals
> from –
>
> > (A) the final order in a habeas corpus proceeding in
> > which the detention complained of arises out of
> > process issued by a State court ....[12]

A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED**, that Ward's amended habeas petition (Dkt. No. 44) is **DENIED** and **DISMISSED**, and it is further

**ORDERED**, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action by regular or electronic mail, and it is further

**ORDERED**, that any state court records that were not filed and docketed in this action

---

[12]    Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." See Fed.R.App.P. 22(b).

be returned directly to the Attorney General at the conclusion of these proceedings (including

any appeal of this Memorandum-Decision and Order filed by any party).

**IT IS SO ORDERED.**

Dated:          October 3,  2007
                Syracuse, New York

_____
Neal P. McCurn
Senior  U.S. District Judge

24